# CHARLESTON.

MOUNTAIN PARK LAND COMPANY *et al.* v. SNIDOW *et al.*

Submitted September 28, 1915. Decided October 26, 1915.

FRAUDS, STATUTE OF—*Specific Performance—Contract for Sale of Land—Right to Enforce.*

> The statute of frauds does not require that both parties sign the agreement, but only that it shall be signed by the party to be charged thereby; therefore, an agreement by the defendant to purchase land at a certain price may be specifically enforced though the plaintiff is not bound to convey, where, by his bill, he offers to perform his part.

Appeal from Circuit Court, Mercer County.

Suit by the Mountain Park Land Company and others

against Conley Snidow and others. From decree for defendants, plaintiffs appeal.

*Reversed and remanded.*

*H. E. DeJarnette,* for appellants.

*Woods & Martin,* for appellees.

ROBINSON, PRESIDENT:

The bill in this suit in equity was dismissed on demurrer, the plaintiffs declining to amend. It is a bill by the Mountain Park Land Company and I. F. Saunders for the specific performance as against the Snidows of the following contract:

"Princeton, W. Va., May 22, 1914.

We Conley Snidow, and L. B. Snidow, both hereby agree with I. F. Saunders that we will give for the next ten days the sum of $925.00 for section 9 of the Mountain Park Land Company as shown on map of said company, and to be more fully described in a deed of conveyance to same, if made. Said payment to be in cash upon delivery of general warranty deed to the said Snidows. The said Saunders agrees to use his best efforts to secure the above property at the above mentioned price but does not obligate himself to deliver the said property, but the said Snidows agree to take the said property upon the above condition if same can be had at the above price.

Witness the following signatures and seals.

C. T. SNIDOW      (SEAL)
L. B. SNIDOW      (SEAL)
I. F. SAUNDERS      (SEAL)"

It is contended that this contract is not enforceable against the parties stipulating to purchase, because no tender of a deed or other written acceptance binding Saunders or the land company was made by them within the ten days and nothing in the contract bound them.

Advisedly we have called the writing a contract. It seems more than a mere offer to purchase, demanding acceptance to convert it into a contract. It is a contract of purchase itself. For, by it Saunders agrees to obtain the property for the Snidows if that can at all be done, and they promise to take

it at the price of $925.00 in the event he does obtain it for them in ten days. Saunders was the agent of the Mountain Park Land Company. This fact was well known to the Snidows. Viewed with the circumstances surrounding the transaction, the writing virtually means that the Snidows unconditionally bound themselves to purchase the property if notified within ten days that the land company would permit it to be sold at $925.00.

Within the ten days Saunders verbally notified the purchasers that he had been successful in his "best efforts" with his principal, and could deliver the property to them. The land company also notified them they could have the land—that it was ready to ratify the conditional sale made by its agent. Saunders kept and performed his part of the contract and within the ten days was ready and willing to give the Snidows all that they had contracted to take, but they asked time to raise the money with which to pay the price stipulated. Time was granted them, Saunders and the land company standing ready to carry out the contract and convey the property. Later the purchasers refused to comply. Thereupon this suit was brought to compel them to take the land.

The bill upon the whole presents a good case. Saunders complied with his part of the contract and obtained within the time stipulated the permission of his principal to sell at $925.00. He gave the Snidows full notice and assurance thereof. Why should they not fulfil the agreement they made? They agreed to purchase in case Saunders was successful in the efforts he undertook. He asks that they be made to do so. The land company tenders a deed. It has at all times stood ready and still stands ready to convey the land. That which Saunders agreed to do, he did. That which the Snidows agreed to do, they should in equity do.

But it is said no deed for the property was tendered to the Snidows within the ten days. By the writing it was not conditioned that a deed was to be tendered them in that time. The deed was to be delivered when the money was ready. The bill shows that the money was not ready within the ten days, and that by this failure of the Snidows to have the money, it was not essential for Saunders and the land company to have the deed ready within that time. The contract

stipulated merely that the Snidows would take the property in case Saunders was successful within ten days in getting the land company to sell. By the contract they expressly agreed to take the land if within ten days it could be had at the price of $925.00. Note the last clause. The fact that Saunders was successful in what he agreed to do and communicated his success within the time to the Snidows, makes it incumbent on them to do what they agreed to do.

We must not overlook the fact that by the very terms of the writing Saunders negatived any obligation to deliver the property. He did not agree to tender a deed within the ten days. All that he agreed to do was to "secure" the property for the Snidows at a certain price, if it could be "secured" at that price. Saunders and the land company show that he did "secure" it, that both at all times have been ready and willing to complete the deal, and that they would have done so but for the default and refusal of the Snidows. The notice to the Snidows by Saunders and the land company, given within the ten days, that the property was ready for conveyance at the price stipulated, put upon the Snidows the duty to take it.

It is not enough to say that Saunders and the land company were at no time bound to give over the land. That does not excuse the Snidows from their express promise to take the land if Saunders succeeded in his best efforts to obtain the permission of the land company to sell it at the price named. They agreed to take it on that simple condition. The condition was fulfilled. Within the ten days all that they sought by the contract was open to them, by the willingness of the land company and Saunders, its agent, to finish the deal. The same is still open to them. By this suit the land is tendered them by the land company, as well as by its agent with whom they negotiated. It must be remembered that this is not a suit to compel a vendor of land to set it over, but one to compel a purchaser of land to take it when tendered in compliance with the contract of the parties. The Snidows did not see fit to bind the land company or Saunders to convey; but they certainly bound themselves to purchase in case the condition under which they agreed to purchase was fulfilled.

Let us state the conclusion of the matter. This case is not within the statute of frauds That statute does not require that both parties sign the agreement. It requires only that it shall be signed by the party to be charged thereby. An agreement, as the one before us, though signed only by the defendant, may be enforced, the plaintiff in his bill consenting to perform on his part. *Capehart's Ex'or* v. *Hale,* 6 W. Va. 547.

The decree sustaining the demurrer to the bill and dismissing the suit will be reversed, and the cause will be remanded for further proceedings.

*Reversed and remanded.*