COTTON JAMMERS AND LONGSHOREMEN'S ASSOCIATION NO. 2 v. JAMES A. TAYLOR.

Decided April 2, 1900.

**1. Trade Association—Suspension of Member Without Notice.**

Plaintiff belonged to a trade union association which secured work for its members, supplied them with tools, and maintained fair wages, and under a rule of the association authorizing the suspension of members, but prescribing no method of procedure, he was summarily suspended, without previous notice, and over his demand to be heard. There was some evidence that the association had been acting under by-laws which governed it under a former incorporation which provided for notice and a hearing in cases of suspension. Held, that plaintiff's suspension was wrongful, he being entitled, in any event, to reasonable notice and an opportunity to be heard, and that he was entitled to such damages as proximately resulted from the wrong.

**2. Same—Adoption of By-Laws—Issue for Jury.**

If the evidence as to the adoption of the old by-laws by the new association was not sufficient to raise that issue, it should have been excluded, and if it was sufficient, the issue as to their adoption should have been submitted to the jury.

**3. Same—Pleading Not Sufficiently Certain and Specific.**

In an action for damages for wrongful suspension from membership in a trade union association which secured work for its members and supplied them with tools, a petition failing to disclose in what manner plaintiff was deprived of the use of the tools, and how and in what manner his suspension affected his right to engage in remunerative labor, or prevented him from securing work, was defective and insufficient as against special exceptions.

APPEAL from the County Court of Galveston. Tried below before Hon. MORGAN M. MANN.

*Wilford H. Smith,* for appellant.

*M. Johnson,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by appellee for damages alleged to have resulted to him by reason of his wrongful and malicious expulsion from the appellant association.

A trial by jury resulted in a verdict and judgment in appellee's favor. The case is here on appeal by the association.

The association is a corporation organized for the purpose of securing work for its members, for maintaining fair wages for their labor, and to supply certain tools for their use. These tools are purchased with funds derived from assessments upon the membership, and each member is entitled to their use and to such other benefits as inured to him as a member of the body under certain prescribed rules and regulations.

One rule provided that any member who should work for a less sum than 40 cents per hour should be subject to a fine of $10 and suspension from the association for one year, during which time he should be deprived of the benefits of membership.

Appellee was a member of the association. At a regular meeting held July 28, 1897, he was by resolution fined $10 and suspended for one year for the alleged reason that he, with certain other members named in the resolution, had worked for the "Lone Star Line" at a less sum per hour than the sum prescribed in the rule above named. This resolution was carried by the requisite vote, and the suspension resulting therefrom was enforced against appellee. He was present when this action was taken, but had received no previous notice of the purpose to suspend him, and did nothing at the time which amounted to a waiver of such notice. On the contrary, he protested against the summary nature of the proceedings, and demanded the right to be heard, but his protest was ignored.

As to whether, at the time of this action, there was in existence any rules prescribing the method of suspension or expulsion, the evidence is conflicting. It was shown that the association had formerly been incorporated under a different name, but had forfeited its charter by nonpayment of the franchise tax; that the old concern had by-laws for the government of the body in the suspension and expulsion of members, and that such by-laws provided for notice and a hearing. It was also shown that a committee was then out, engaged in the task of formulating by-laws for the new corporation. It was contended that the by-laws of the defunct corporation controlled the new body, and there was some evidence that it had been acting thereunder, though none that they had been formally adopted.

It was shown that the suspension of appellee was final, if valid, he having no right to appeal to any other tribunal connected with the order. His right of action depends, therefore, upon the invalidity of the action of the association in suspending him.

Appellant contends that the suspension was valid and binding in the absence of by-laws providing for notice and trial and prescribing the mode of procedure. In support of this contention appellant cites the case of Manning v. San Antonio Club, 63 Texas, 166. In that case the club was organized for literary purposes, and to promote social intercourse among its members. All the members were required to sign the constitution and by-laws. No definite mode of trial was prescribed by the by-laws, but one of the articles provided that any member should forfeit his membership whose conduct should be pronounced, by a majority vote of the directors, to have endangered the welfare, interest, or character of the club. The party complaining insisted that he was entitled to notice. The court held that the by-law quoted was a part of the contract of membership. That by becoming a member he agreed to be bound by that method of expulsion. The relief asked was therefore denied him.

In discussing the case Justice Delaney, who delivered the opinion, says: "When membership in certain societies confers upon the individual important benefits * * * of peculiar advantages in trade or business, * * * such rights are protected by the law of the land, and are generally secured in some way by the charter." The case disposed of in that opinion was distinguished from the class of cases mentioned in the above quotation. It is conceded in that opinion that cases involving valuable rights, if not protected by the charter, come within the protection of the law. The case before us is one involving valuable rights. In such cases the weight of authority tends to support the doctrine that a by-law providing for expulsion without notice or trial will be held invalid. A by-law to be valid must be reasonable. 1 Beach on Priv. Corp., secs. 309, 318, 320; Bacon, Ben. Soc., secs. 82, 85; Ludowski v. Society, 29 Mo. App., 337.

In this case, if the association was in fact acting under the by-laws of the old corporation, the supension was void because their provisions were ignored. If the old by-laws were not operative, then no by-law existed providing rules of procedure in such cases, and appellee was entitled to reasonable notice of the nature of the charges against him and an opportunity to be heard. 9 Am. and Eng. Enc. of Law, 492. An unreasonable by-law has been held binding as a contract when assented to by a member (Bacon, Benefit Societies, section 87), and this rule enables us more clearly to distinguish the Manning case, supra, from the case under consideration. In the absence of any by-law there could be no such assent.

The contention of appellant that the act of expulsion was binding upon appellee is not tenable. He would be entitled to a judgment for such damages as proximately resulted from the wrong. Benson v. Screwmen's Assn., 2 Texas Civ. App., 66.

Appellant also complains that the old by-laws should not have been admitted in evidence, unless shown in some way to have been adopted by appellant. We think this contention sound, and unless the evidence is sufficient at least to raise an issue as to whether they were so adopted, they should be excluded. If such issue is raised, the question of their adoption should be submitted to the jury.

It is assigned as error that the court failed to define to the jury what would constitute reasonable notice to appellee. This should have been done, but appellant can not be heard to complain unless a requested charge had been refused, containing a proper definition. No such charge was requested.

By the eighth assignment of error appellant complains of the refusal of the trial court to sustain a special exception to the petition. The exception is, that the petition fails to disclose in what manner appellee was deprived of the use of the tools, and how and in what manner his suspension affected his right to engage in remunerative labor, or prevented him from procuring work. The petition is defective in the

respects pointed out, and the court erred in refusing to sustain the exception. It is impossible to ascertain from the petition what connection existed between his membership in the association and his means of obtaining work, or in what way he was deprived of an opportunity to secure employment. This court's knowledge of the nature of the organization has been gleaned in a general way from the facts adduced upon the trial, and not from appellee's petition. The various questions presented have been discussed and disposed of in view of appellee's right to amend before another trial. In this connection we suggest that the nature and extent of the damages alleged should be more explicitly stated.

The other assignments need not be noticed, as the matters complained of, if error, are not likely to occur on another trial.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*